[No. 21859. Department One. October 21, 1929.]

W. I. HUDLOW *et al., Respondents*, v. J. L. HODGSON *et al., Appellants.*[1]

*M. M. Moulton* and *E. L. Casey*, for appellants.
*Edward A. Davis*, for respondents.

PER CURIAM.—In July, 1928, the respondents were the owners of a tract of land situated near Kennewick, in this state, on which they were making their home. They also owned certain personal property, consisting of horses, cattle, and the usual farming utensils ordinarily found on such a place, all of the property being free from incumbrances of any sort. The appellants, at the same time, were the owners of a tract of land situated near Weston, in the state of Oregon, and were also the owners of certain personal property of the same character as that owned by the respondents. The land of the appellants was incumbered by three separate real property mortgages, and the personal property was incumbered by a chattel mortgage. On July 10, 1928, the parties entered into an agreement for an exchange of the properties. In pursuance of the agreement, they executed deeds to their respec-

[1]Reported in 281 Pac. 331.

tive properties and deposited them in escrow with a bank in Weston. Attached to the escrow agreement, was a writing which expressed in part the terms and conditions of the exchange. This was somewhat crudely framed, but it seems to have been the only writing in which the terms of the agreement were attempted to be expressed. The escrow holder was empowered to deliver or record the deeds on receipt

"  .  .  .  of abstract of both parties being brought down to date and accepted, and in compliance with the terms of the agreement between the parties hereto attached."

After the deposit of the deeds, the parties moved from the one place to the other, and some three weeks later, the respondents conceived that they had been defrauded in the exchange by reason of false representations made by the appellants as to the character and condition of the Oregon land, and served a written notice on the appellants and the escrow holder to the effect that they would not carry out the agreement, and immediately thereafter abandoned the land. The agreement, at that time, had not been consummated; the deeds had not been delivered, and the appellants had not taken up the chattel mortgage on the personal property, nor relieved the real property of a mortgage, which by the terms of the written contract they had agreed to do. After the notice of the rescission had been served, the escrow holder, acting in disregard of its written instructions, caused the deeds to be recorded. The present action was instituted after the recordation of the deeds, and resulted in a decree rescinding the sale in so far as it was then possible so to do.

The evidence shows very clearly that the respondents made an ill-considered bargain. But it may be that this fact alone, or even when considered with the fact

that the escrow holder abused its authority, will not warrant a rescission of the bargain; that there must have been connected with the transaction some fraud or overreaching on the part of the appellants which induced the respondents to enter into the contract. The trial court made no findings of fact, but it can be gathered from the evidence introduced at the trial that its decree was rested principally on misrepresentations as to the quantity of water that was available for use on the Oregon lands. The land is arid, and, while it is in part suitable for growing grain, it is for a large part suitable only for pasturage of stock, and a sufficient supply of water was an important consideration. It is to the questions whether there were false representations in this respect, and whether the respondents relied upon them, or were entitled to rely upon them, that the arguments of counsel are mainly directed. The record is large, and we shall not review the evidence in detail. More generally, it may be conceded that the respondents acted with childlike simplicity. They visited the place only twice before the agreement was entered into, arriving at it on both occasions late in the afternoon, when a careful inspection of the place was not possible. It was then made known to them that there was no supply of water on the place for household use, and that water for this purpose was being hauled from a distance. They were made aware also that the stock on the farm were not obtaining their necessary supply of water from the farm, but were being driven daily to a watering place away from the land. Instead of investigating for themselves the causes for these conditions, they accepted the explanations given by the appellants for them.

But we think, nevertheless, that the respondents are not estopped by their conduct from complaining. The appellants knew that the respondents had not

investigated the conditions, and knew that the respondents were relying on their representations as to them. It was their duty under these circumstances to state the facts truly, and that they did falsify concerning them, the evidence, in our opinion, more than justifies.

As we view the record, the decree of the trial court is right, and it will stand affirmed.